The first four cases on the calendar are submitted on the briefs at this time, which leaves for argument 04-1659-705-15469 and 05-15751, the Crown Paper Liquidating Trust cases. I understand that counsel for the Appellees have allocated their time between themselves. Is that the story? With your comment, Your Honor, Mr. Lower will address the issues of repeated appeals to the extent the Court has any questions. Other than that, I will be here talking to the appellees. And you are? And Mr. Parrish. Thank you, Mr. Parrish. And for the Appellees? Your Honor, my name is Kirsten Miles, counsel for three of the individual appellees. And we've been authorized to speak on behalf of all appellees. So I'll be the only one speaking here. And then in the event the Court has questions on fees or costs, I intend to answer those as well. Counsel for all the other parties are here. So if there's any specific questions relating to particular parties, those counsels are ready to answer them. In addition, if the Court has specific questions relating to fees as they relate to specific parties other than my clients, those parties are present also and can answer such questions. So if Mr. Chiappetta is on the calendar, you're going to let Ms. Miles do the talking unless we have questions at the end? Yes, Your Honor, unless the trust counsel raises questions that relate directly to my client deal-based fee loan. Of course, if there's questions about my client's fee loan, I can address those directly to counsel. Thank you. Well, it looks like the lineup cards have been swapped, so we're ready to go. Thank you. Proceed, please. Good morning. Timothy Pierce for the appellant. In dismissing this case with prejudice, the district court did not differentiate among the defendants. The law is everywhere, so far as I can tell, that a wrongdoer cannot invoke his own wrongdoing as a bar to recovery. The imputation doctrine applies to bar claims against third parties. There's a number of authorities for this proposition that we've cited, including the Ninth Circuit. In a case just decided last year, I think Judge Rawlinson was on the panel, Smith v. Arthur Anderson, in which the court stated that it is axiomatic that a trustee has authority to bring actions against the debtor's officers and directors for breach of duty or misconduct. Was that a standing issue? Wasn't that a standing issue? It was raised in that context, Your Honor. And the ‑‑ There's a difference between being able to bring suit and being able to prevail, wouldn't you agree? It is. And in this case, the court did find there was standing. And the dismissal was based on an affirmative defense, an equitable defense of imperi delicto. But the courts have unanimously held that even in the context of this defense, the wrongdoer cannot set up his own wrongdoing as a defense to a breach of fiduciary duty action. For example, in the Health South litigation in the Delaware Chancery Court, the judge there said that Mr. Scrooge, who was the defendant and CEO, who raised a defense of imperi delicto, the court said that was a transparently silly notion, because the imperi delicto doctrine has been rejected in situations when corporate fiduciaries seek to avoid responsibility for their own conduct vis‑a‑vis their corporations. Who are the parties in that case? It's really important who's suing whom in that context, right? In this case, there were shareholders and I think the trustee bringing causes of action against Scrooge, the CEO, for breach of fiduciary duty. In another case from the District of New York, Southern District of New York, imperi delicto bars claims against third parties but does not apply to corporate insiders or partners. Otherwise, a trustee could never sue the debtor's insiders on account of their own wrongdoing. Again, in remediators, which is a case relied upon by the defendants. It's decided under New York law, but the bankruptcy trustee suing on behalf of the debtor may pursue an action for breach of fiduciary duty against the debtor's fiduciaries. So those cases involve sole shareholders. The mediators case involved a sole shareholder and decision maker. And this, I think, leads to a point of error by the district court because the district court concluded that in the event of a sole shareholder situation, the imputation defense prevails. But none of the cases cited by the district court or in any other court stand for the proposition that ownership alone is dispositive on this imputation doctrine. Every case that we look at, mediators, the Wagner rule itself, out of the Wagner case, Hirsch versus Arthur Anderson, the court was careful to say sole shareholder and decision maker. And we can see it applied to the facts of this case why that's significant because we have alleged the existence of three innocent decision makers. I don't understand what difference that makes. They're all working for the James River Company. I'm sorry, Your Honor? They're all working for the sole shareholder, ultimately, aren't they? No, I would not say that they are. Who are they working for? I mean, there's only one shareholder, and they're directors of the company. There is one shareholder, but there are also innocent decision makers on that board. So? They're not suing anybody. They're not plaintiffs in the case. No, they're not. But there's no case that we have found where the sole shareholder rule alone is enough. What could those allegedly innocent directors have done to thwart the decisions of the sole decision maker? Well, there's very little guidance on that, Your Honor. The Wexler decision, the second Wexler decision out of the Second Circuit, suggests two things, two possibilities. One is the innocent decision makers can object in the context of the board of directors themselves and try to stop the fraud. But if they don't have enough votes or enough power to do so, wouldn't that be futile? Yeah, it might, and that's, I think, why the Wexler court concluded that the innocent decision maker, the innocent director, can go outside the corporation and effectively blow the whistle. And that was regarded as sufficient to defeat the sole shareholder argument in the Wexler case. But again, Your Honor, I find no cases where the status of ownership itself is sufficient to defeat this innocent decision maker. And if you think about the rationale behind the agency law here, that makes sense, because the notion is that there is no one to whom the agent can provide information or from whom he can conceal it. And that's the basis of the sole actor rule. And I emphasize the sole actor. It is not the sole shareholder rule. Now, in our case, there were people, three people, from whom this fraud could be concealed. Weaver, James, and Watkinson. And we have pled in the complaint that had they known of the truth, they could have taken steps to stop the fraud, either inside the corporation or had they been dismissed because they're in a minority position on the board, they could have blown the whistle. And there's nothing in the case law to suggest that a director cannot go outside the corporation to disclose that fraud. So in this case, the agent and the principal are not the same. And that's why the cases have uniformly held that as long as there's one innocent decision maker, that's enough to invoke the innocent decision maker exception. For that, I cite the Wexner case, Sharp International out of New York as well. They stand for the same proposition. As long as you have one, that's sufficient. Now, in addition to dismissing the causes of action made against the directors in which the trust asserted they breached their fiduciary duty, the court did not distinguish between conduct of the defendants in connection with or in cooperation with or collaboration with bad management and conduct that's distinct from that. We sometimes refer to this as a churning claim because it's based on the Wagner case. And in that case, the claims against the third parties for cooperating with the director, the bad director, were considered to be barred by imputation on standing grounds. However, there was a claim against the brokerage house, which was based on churning the accounts of the debtor, and that churning claim was not related to cooperation with management. Now, we have such claims in this case. McGuire Woods, the law firm, as you know, represented Crown until 2000. They have, as lawyers, a fiduciary duty to their clients right the way through the end of their representation. Houlihan Loki. In June of 1999, they entered into a contract to provide a fairness opinion on the Berlin Gorham Mill. That June 1999 contract gave rise to independent duties on the part of Houlihan Loki. They rendered the fairness opinion. It was wrong because the mill was grossly undervalued. Solomon Brothers, in 1996, they were hired as a financial advisor to advise Crown on potential public offerings of equity. That gave rise to an independent duty based on their contract as financial advisor. DLJ, throughout 1997 and 1998, advised the company, made presentations to the board of directors in April and December. This, too, gave rise to an independent duty quite separate from cooperation with bad management. They advised on the possible sale of the St. Francisville Mill, Project Cajun, Project Lakeside. These were all subsequent to the 1995 spend transaction upon which this imperio delicto defense was based. Same with Ernst & Young. They provided clean audit opinions, 1996 through 1999. So what we have here are claims which are analogous to the churning claims in the Wagner case. They are separate and independent for cooperation with bad management. Those claims should not have been dismissed. The third point I want to make is I think that the court misapplied the imputation doctrine altogether. As we discussed earlier, the court relied on the sole actor rule, and that reliance was incorrect. I've pointed out the cases on the innocent decision-makers. I won't go over them again. But let me ask you this. What's the nature of the claims you're asserting against the third-party defendants, the law firm and the other? What's the nature of the claims? It's a wide variety of claims, Your Honor, ranging from negligent misrepresentation to fraud to breach of fiduciary duty. I thought that Virginia law did not recognize those types of actions against third parties. I see nothing to that effect in Virginia law, Your Honor. And with specific regard to the imputation doctrine, we know that Virginia has accepted the adverse interest exception, which, by the way, the district court acknowledged that we had sufficiently pled in this case. I see nothing in Virginia law regarding the sole actor rule or the sole shareholder. Well, okay, the cause of action of negligent misrepresentation. Was that a cause of action that you pled against the law firm and against the other firms? I believe it was, Your Honor, and I'll check very quickly. It was in count seven. Does Virginia law recognize such a cause of action? I don't believe it does expressly, but we've construed that as an or asked the court to construe it as a cause of action for constructive fraud, which is recognized in Virginia. But I don't think the district court reached that issue because the case was essentially resolved on the in per delicto basis. I thought the district court did. At page 20 of its first opinion, it said negligent misrepresentation claims are not cognizable because Virginia law does not recognize the tort of negligent misrepresentation. I beg Your Honor's pardon. That's correct. Then what about the breach of the duty of good faith and fair dealing? That's inherent with respect to the law firm, Your Honor. That would be, I think, inherent in the breach of contract cause of action. But doesn't Virginia law preclude such a cause of action as well? I don't. I think to the extent that you do not have an independent breach of contract, Virginia would not recognize that as a stand-alone cause of action. So what is it paired with in your view that would make it viable? The actual breach of contract between the law firm and the corporation crown. And to the extent that that's not shown, then I would agree with Your Honor that probably the breach of good faith and fair dealing claim would not be seen. So you're sort of hanging your hat on a constructive fraud theory, basically. When it all boils down to the bottom line, it's a constructive fraud cause of action. Well, with respect to the law firm, which I think Your Honor is still talking about, also aiding and abetting a fraud, aiding and abetting a breach of fiduciary duty, and the Virginia Conspiracy Act claim, and fraud itself. So there are actually about ten causes of action stated against the law firm, one of which is or two of which is the breach of contract and the implied duty of good faith and fair dealing. I wonder if you'd say a word or two about your attorney's thesis appeal. Yes, Your Honor. If I may defer to Mr. Loeb. You've got about seven minutes left. Yes. Thank you. And to the extent Mr. Loeb doesn't take up all that time, I'd like to reserve a few minutes for rebuttal. Great. Good morning, Mr. Loeb. Good morning, Your Honor. It's Malcolm Loeb. I'll be very brief because I want to save some time for rebuttal. With respect to the fee appeals, we note at the outset that indemnification agreements are strictly construed under both New York and Virginia law, the laws that apply, and that the burden is on the party or the entity seeking indemnity. With respect to Houlihan Loki, we believe that there are three reasons why the court was mistaken in granting their motion for attorney's fees. One is under their contractual indemnity, they are required to be a prevailing party, and as we cited in our brief, the relevant case law states that for contractual indemnity purposes, you are not a prevailing party until the final appeal is exhausted. That, of course, has not happened, so therefore they were not entitled to indemnity. Second, and this is really the main reason, is our contention that the action did not arise out of the document that provides for the indemnity. The indemnity document was the 1999 Fairness Opinion, which we say was a corollary, minor part of our complaint, that the duties, the breach of duties, and all of the causes of action in the complaint against Houlihan Loki are based upon the 1995 Solvency Opinion and the presentation to the Board of Directors of Crown in 1995. With respect to DLJ, essentially the argument is that the DLJ agreement does contain an indemnity. We're not contesting that. It's just that the indemnity as written under New York law does not apply to inter-party lawsuits, doesn't apply to lawsuits between DLJ and Crown, and that's the Hooper case and the Oscar Gruss case pretty clearly provide that the type of language and the type of interpretation that would apply to the language in the DLJ agreement can only reasonably be interpreted as providing for indemnity with respect to third-party suits. Again, you know, we've addressed this in the brief, so for brevity's purpose I can expand there. And then finally, with respect to the Houlihan Loki and the DLJ fee appeals, essentially what they got here were administrative priorities. I know the Court didn't expressly rule that, but that's de facto what they got, and that was improper. And any reliance by the defendants on the Ibarra case or the Siegel case, those were discharge cases. That's not what we have here. This is not a case where a litigant has been discharged and then is coming in to use an agreement as a sword, as they say. You can't use it as a shield and then come in and use it as a sword. That's not what's happening here. And Ibarra even says this is a discharge case. We're not applying administrative priority cases. In our case, this is a corporate debtor. The fees were paid out of corporate trustee monies, and essentially they were administrative priorities. They jumped to the head of the line. They got paid off first before all the other creditors. Because these were indemnities that were created prior to bankruptcy, they were pre-petition agreements for pre-petition services, and the indemnities included in those agreements were a form of consideration in exchange for those services. The source of that indemnity is what controls whether there should be administrative priority. The source of that, because it's pre-petition, means that these should be general unsecured claims and they should not have jumped. What concern is that of yours? I mean, the creditors might have a right, but what do you care? Well, because we represent the trustee who is prosecuting creditor claims, among other things, and has obligations toward all the creditors. So you have a trustee here with very little money who's being forced to actually couldn't pay the fees, had to be advanced the fees in order to pay them. So there's a real chilling effect argument as well. Counsel, what's your best case authority for your argument that in a contractual indemnity situation, that the appellate avenues must be exhausted before one is considered a prevailing party? Well, I don't have the cases heights in front of me, but there was the Lucier case. There was a Hawaii case called Lucier, and there was the Melwani case. Again, I may be mispronouncing it. There were, I think, four cases we cited in that section of the brief. In the Ninth Circuit, we define prevailing party for purposes of attorney's fees. See, I think the point, though, is that those are – that's not with respect to contractual indemnities. See, attorney's fees, I understand prevailing party, and there may be a right to that that doesn't go – that means something different than prevailing parties with respect to an indemnity for payment of those fees. I understand your argument. All right. Thank you, Your Honor, unless the Court has any questions. Thank you, Mr. Will. Thank you. Ms. Miles. Good morning. Good morning. My name is Kristen Miles. As I said, I'm speaking on behalf of all appellants. This case relates to a 1995 spinoff. I want to make the Court fully aware of the details of the transaction, but the – there's also a separate action that's still before the district court. The court dismissed all the claims against third parties, as well as claims against James River that overlapped with the claims against the third parties. The action against James River or Fort James, as it's now called, remains before the district court. That's a trustee action brought on behalf of creditors under a fraudulent conveyance theory. That claim is not before the court. What the court has now is claims that are pursued under Section 541 of the Bankruptcy Code, under which the trustee pursues claims that were held by the debtor as of the commencement of the bankruptcy. That's what solely exists before the court today. Those are claims all brought on behalf of the debtor. The district court dismissed all the claims. There were three essential elements to what Judge Chesney did, each of which were analyzed correctly, and we would urge the court to affirm on the basis adopted by the district court. First, the court held that under Section 541, the trustee must stand in the shoes of the debtor. The trustee is subject to all defenses of the debtor, which includes the defense of in pari delicto. That result is consistent with the results of every court, every circuit court that has addressed the question, which now add up to nine circuits, the First, Second, Third, Fourth, Fifth, Sixth, Eighth, Tenth, and Eleventh. This court and the Seventh Circuit are the only ones that haven't considered that question yet. The issue simply hasn't arisen. The only court case that Crown cites for a contrary proposition is a district court Florida decision that has now been overtaken by contrary Eleventh Circuit precedent. We would urge the court to affirm that ruling because it's correct, unless the court has any other questions on that. Crown relied on a case called O'Melveny and Myers, which went from this court to the Supreme Court and then back again, but that case didn't involve Section 541. And numerous of the courts that have, I just mentioned, that have addressed this issue since O'Melveny and Myers have all distinguished it on that basis and said it's inapplicable. Counsel, were you going to address the argument from opposing counsel regarding the innocent director defense? Yes, Your Honor. The innocent director argument is really a red herring because although the presence or absence of innocent directors has been an issue in some cases cited by appellant, it has never been an issue in a case where there was a sole shareholder. And, in fact, in every case where there has been a sole shareholder, the courts have rejected the argument. If I can tell the court some of those cases, just give me a moment. FDIC v. Ernst & Young is one from the Third Circuit. The Bennett case from the Second Circuit, which we cited in our briefs as well, and the Lafferty decision from the Third Circuit, which the district court cited. In each of those cases and in other cases cited in our briefs, the courts have said that the presence or absence of innocent directors is irrelevant if you're talking about a sole shareholder. Now, let me just make one point of clarification because counsel for appellant seem to be saying it isn't just a sole shareholder rule, it's a sole actor rule. That's simply not borne out by the cases. In every case where there was a sole shareholder, that was sufficient. The Wechsler court and other courts quoting from it, that's a district court decision in New York, used loose language to the effect of the relevant shareholder and or decision maker. I don't think much can be made of that, even if we were applying New York law here, which we're not, because and or is fully consistent with the idea of the relevant shareholders being the 100 percent shareholders that we have here. That's who's relevant for purposes of this decision. Now, as I said, the courts in FDIC versus Ernst & Young, Bennett and Lafferty, specifically addressed this innocent director argument in a sole shareholder context and rejected it. We would urge this court to do the same thing, and Crown has cited no contrary authority for the proposition that the court shouldn't reject it. The principle basis for the district court's decision was its application of the rules of imputation in impari delicto. Again, this is ground that has been covered quite extensively in other circuit case law, specifically the Lafferty decision cited by the district court. That's, again, the Third Circuit decision. The mediators' decision, again, the Breeden-Bennett decision from the Second Circuit, Breeden being the district court, Bennett being what it was called in the Second Circuit. Again, FDIC versus Ernst & Young in the Dublin securities case, all of which addressed this exact same issue, which is where you have a sole shareholder, where the fraudulent actions are being taken at the behest of the sole shareholder or by the sole shareholder, the trustee can't recover because the actions of the sole shareholder and or the parties acting at the behest of the sole shareholder are imputed to the debtor and hence to the trustee. Straightforward formulation that the district court adopted here correctly. Here Do you have the same argument for the third-party defendants? The same argument applies to all defendants in the case. Regarding counsel's argument that the analysis should be different for insiders versus third parties, there is no such distinction in the case law. What counsel, first of all, the critical point also to make at the threshold, especially since that was counsel's lead argument, is that that argument was expressly found by the district court to have been waived. Crown did not, the trustee did not make that argument to the district court at any point in the briefs on the motion to dismiss. It made the argument for the first time in a motion for reconsideration of the district court's second decision, saying that only at that point for the first time would you, there should be a different rule that applies to claims against insiders. The district court said it was waived. It wasn't raised below. It should have been, it could have been, and it wasn't. Hence, it's waived. This court has sensibly and repeatedly said it won't consider arguments that weren't properly raised before the district court, and here there's an express finding that this one was not. In addition, the district court went on to say correctly again that the argument is without merit. It rests upon a statement in mediators relying on a New York statute. That says that a trustee in bankruptcy may sue officers and directors for breach of fiduciary duty, essentially. Some courts have construed that statute, and actually mediators really did not. Mediators really addressed it as an issue of standing. As Your Honor noted in connection with the earlier Smith decision of this court, there's a difference between standing analysis and whether the trustee can actually prevail and defeat defenses that would otherwise be applicable. That was mediators. A couple of cases have cited mediators for a broader proposition that somehow impari delicto defenses don't apply to a trustee claim against insiders. That proposition has very little support in New York law, because it's certainly not apparent even on the face of the New York statute that the district court here found was driving mediators. But it also has no support generally in common law elsewhere in other states, in particular in Virginia. The leading case on point we cited was the Alice Roofing case out of Texas in which the exact argument we have made, the sole shareholder argument, defeated a claim, a defense, but where there was a sole shareholder. And it was a claim against the CEO of the company. It's the exact facts that Crown says now don't implicate the defense. Alice Roofing is the strongest case, I think, going the other way on that. But there's nothing in any of the case law, other than this idiosyncratic New York line of cases that's arguably wrong, that supports the point. We also have cited, just while I'm on the subject of waiver, because that argument was waived. The other argument that was waived is this distinctiveness argument that Crown is now making, that somehow the claims against some of the parties are different from the claims that might be subject to the impari delicto defense. The district court found otherwise because however the claims are styled, whether they're styled as fraud, breach of fiduciary duty, or otherwise, they all depend on the same lack of knowledge. In other words, an element of the claim is that Crown, the debtor, lacked knowledge of the fraudulent nature of the spinoff. Each of those claims, even in what Crown describes as the post-spinoff time frame, the nature of all of those claims are that the defendant in question, whether it be E&Y, DLJ, or other individual directors, for example, didn't tell Crown that the spin was fraudulent. You had a duty, the duty arose after the spinoff, and the duty obliged you to tell us that the spinoff was fraudulent and or that the assets transferred as part of the spinoff were overvalued. Judge Chesney found, and Crown has never seriously, I'm sorry, the trustee has never seriously disputed that if its knowledge of the underlying fraudulent nature of the spinoff from the pre-spin time frame is imputed to it and is carried over to the post-spin period, a legal question that I'll address in a moment, then that same knowledge defeats its claims that arise after the spin to the extent that those claims, which they all do, depend upon its lack of knowledge of the fraudulent nature of the spin. With respect to whether the knowledge does carry over, this is an issue that was raised and discussed in the briefs, but there's no case, Crown has cited no case for the proposition that knowledge acquired by a corporation under one set of shareholders or management somehow changes or disappears when the company has a new set of shareholders or managers. Every case that has addressed that question has said, of course, that's not the rule. If that were the rule, then a corporation could always avoid knowledge, avoid its own guilty knowledge in liability cases by simply changing shareholders or managers, which obviously isn't the rule. We cited two cases that squarely addressed this point. One of them called Fireman's Fund, which applies to New York law, and the Ellis Roofing case I mentioned earlier. In both of these cases, a sole shareholder had guilty knowledge and or there were officers acting at the behest of the sole shareholder. That knowledge, the management and ownership then changed. The new owners said, well, gee, we didn't know about it. We shouldn't be imputed with that knowledge. We're innocent. And the court said, no, that knowledge is the company's knowledge, and it simply carries over. Judge Chesney's second decision was a straightforward application of that principle, and there's no case that's been cited to the contrary by the trustee. Those are all the points I have that relate to the merits of the court- I have a question. I take it that you want us to affirm the district court decision in its entirety. Is that correct? Yes, Your Honor. Could we do that without reaching a statute of limitations question? Yes. How do we do that? Because the we have raised the statute of limitations as an alternative basis for affirming the result reached by the district court. That's fully briefed. But it's only an alternative because the district court's decision on impari delicto disposed of all of the trustee's claims against the various appellees. Okay. Are you going to address the attorney's fees? I am counsel for three parties, Mr. Cutchins, Mr. Hare, and Mr. Williams. We are appellants in one of the three fee appeals. We did not intend to argue today that fee appeal. I think it's fully briefed in the papers unless the court has questions. Two of the other counsel, Mr. Chiappetta, is here to address if the court wishes to ask questions about the other fee appeals. And if the court has questions on the costs ruling, I'm happy to answer that vote. If you're happy to rest on the briefs, we're happy for you to do so. I guess we're all happy then. Thank you. And with Judge Rollins and Judge Nelson's consent, although you folks have used up your time, we'll give you two minutes in rebuttal if you want it. Thank you, Ms. Miles, very much. Thank you, Your Honor. Mr. Parris. I did not do a good job earlier when Judge Silverman asked me about the innocent decision-maker rule, and I'd like to make two limited points. One is the Bennett funding case out of the Second Circuit. In that case, there was absolutely no dispute that there was a sole shareholder, Bud and Kathleen Bennett. They owned all the stock of Walnut Leasing. Why is it that the district court allowed a year of discovery and a four-day evidentiary hearing on whether there was an innocent decision-maker? Why did the Second Circuit review that decision and review all that evidence? If there was a sole shareholder rule, that would have been the end of it. But instead, the district court took all this evidence, the Court of Appeals, the Second Circuit reviewed all the evidence. Why? Because they wanted us to find out whether the evidence supported the existence of an innocent decision-maker, and they didn't find one. But the point is, our case was resolved on a 12B6 motion. We should have the chance to introduce that evidence. We've taken discovery. This case should be sent back so we can produce evidence. Second point is, Counsel for the Appellees have still not cited one case that was decided on ownership alone, the sole shareholder status. There is none. If you review the Second Circuit cases, they're all sole shareholder and decision-maker. Third, the cases cited from the various districts, talking about Bennett funding, Ponzi scheme, Dublin securities alter-ego situation, hedged investments out of the Tenth Circuit Ponzi scheme, Lafferty Ponzi scheme, Simcoe, engine of theft against outsiders. We ignore the corporate form when it's a sham, when the principal and agent are one and the same. We don't do it here because Crown was not a sham. And this Court in O'Melveny said you should respect the corporate form, and that's what we're asking the Court to do here. Roberts. And, Mr. Parrish, you're out of time. Thank you. Thank you. Thank you very much. Well, thank you, Ms. Miles. Thank you as well. The case has started.  We'll stand in recess.
judges: T.G. Nelson, Silverman, Rawlinson